JORDAN *et al.* v. THE CITY OF HANNIBAL, *Appellant.*

87  673
88a 181
87  673
85a 335

1.  **Municipal Corporation :** DEFECTIVE BRIDGE. Where a city undertakes to build a bridge for public travel, it is bound to put and keep the same in a reasonably safe condition for such use.

2.  ——— : ———. The rule that a municipal corporation acts judicially in selecting a plan upon which a public improvement is to be constructed, and that no private action will lie for lack of judgment in that respect, has no application to an injury resulting from its negligent construction of a bridge.

3.  ——— : PERMITTING BRIDGE TO BE OUT OF REPAIR : NOTICE. In an action against a city for an injury resulting from having permitted its bridge to get out of repair, it must be shown to have had notice of the defective condition of the bridge, or that the same existed for such a length of time that the city, by the use of ordinary care, would have discovered the defect in time to have repaired it.

4.  **Bridge, Driving on in Trot.** Driving a horse in a trot upon a bridge held, in this case, not to be contributory negligence.

5.  **Instruction.** An instruction is properly refused which leaves it to the jury to determine a question both of fact and law.

*Appeal from Hannibal Court of Common Pleas.*—HON.
JOHN T. REDD, Judge.

VOL. 87—33

AFFIRMED.

*W. C. Foreman* and *Easley & Russell* for appellant.

(1) The petition does not state facts sufficient to constitute a cause of action. (2) The city could not be held liable for any defect in the plan of the bridge. *Detroit v. Beckman*, 34 Mich. 125; *Foster v. St. Louis*, 71 Mo. 157; *Carr v. Northern Liberties*, 35 Pa. 324. (3) Where a *casus*, or "an act of God," is pleaded as a special defence, then if prior negligence is relied on to defeat the plea, it must be specially pleaded and proven, and such prior negligence is not available as an avoidance unless it is shown that it was not merely a condition, but was an active and co-operative cause of the accident. Wharton on Neg., sec. 123; *Read v. Ry.*, 60 Mo. 206; *Ry. v. Read*, 10 Wall. 176; *Pruit v. Ry.*, 62 Mo. 527. (4) The negligence of the respondent, in driving on the bridge in a trot, should have been submitted to the jury. Dillon on Mun. Corp. (3 Ed.) sec. 1020. (5) The appellant could only be required to keep its bridges reasonably safe for travel in the ordinary modes, and able to resist storms of ordinary and usual volume.

*T. H. Bacon* for respondent.

(1) The petition sufficiently stated a cause of action. *Haire v. Kansas*, 76 Mo. 438. (2) The defendant's refused instructions were properly refused. A rain, however sudden or unusual, cannot necessarily account for a practically antecedent calamity. The instructions given on both sides by the court demanded of plaintiffs more proof than the case required, as thereby the plaintiffs were held to prove the ordinary character of the storm as well as of the current. *Houx*

*v. Batteen*, 68 Mo. 84. The rain that caused the bridge to fall, though extraordinary in force and violence, might not have lasted long enough to make a current of extraordinary force.

BLACK, J.—This is an action to recover damages for the loss of plaintiff's horse, buggy and harness, occasioned, it is alleged, by a defective bridge. The answer admits the ownership of the property and the loss at the time stated in the petition. It also states that the loss was occasioned by the act of God, to-wit, an extraordinary rain storm, and it also sets up contributory negligence on the part of Crosby. The bridge was a wooden structure, with mud sills and upright posts. The evidence tends to show that the bridge had been for a long time out of repair, and was in a dangerous and unsafe condition. Other evidence is to the effect that it had been repaired just before the accident. Crosby and his wife were in the carriage and attempted to cross, when the bridge fell, and the property was lost. The evidence was conflicting as to the character of the storm.

1. It was the duty of the defendant to keep the bridge in a reasonably safe condition for travel thereon. If it became out of repair, notice of that fact should be brought home to the defendant, or the defect must be shown to have existed for such a length of time that the defendant, by the use of ordinary care, would have discovered the same in time to have made the needed repairs. These principles are fairly incorporated in the instructions given. Others given are in effect that if the bridge fell because of a rain storm of extraordinary force and violence, when it was in a condition to resist an ordinary storm, then plaintiff could not recover. It is true the second instruction assumes that the bridge fell because of a storm. This is the position taken by the answer, save it goes further and states that the storm

was one of extraordinary force and violence. The effect of the instruction, therefore, was to narrow the issues in favor of the defendant, and of that it surely cannot complain.

2. The court, of its own motion, gave an instruction stating that it was the duty of the defendant, in adopting a plan for a bridge, to consider the nature and condition of the materials composing the bed and banks of the stream, and the force of the current arising in said stream from ordinary storms, and if the bridge was built upon a plan that necessarily rendered travel over it dangerous in the usual modes of travel, during a rain storm of ordinary force and violence, and that the loss was caused by such defect in the plan of the bridge, then the finding should be for the plaintiff. The creek was a wet weather water way. In a distance of a quarter of a mile above the bridge it has a fall of one hundred and thirty-seven feet, evidence tended to show, to be safe, the bridge should have abutments of stone, or piles driven into the ground, or wings built out from the bents to the banks. Generally it is true a municipal corporation acts judicially in selecting a plan upon which a public improvement is to be constructed, and no private action will lie for a lack of judgment in that respect. Sher. & Red. on Neg., secs. 144, 374. The rule has been applied in this state where a street was brought to a grade pursuant to a plan for grading the streets prescribed by ordinance, and private property was flooded by reason of the changed grade. *Foster v. The City of St. Louis*, 71 Mo. 157. But we do not see that the rule has any application to this case. Whether the defendant could or would build a bridge with abutments of masonry or of wood was, of course, a matter for the city council to determine. But where it undertook to build one, it was in duty bound to put and keep the same in a reasonably safe condition for travel. *Staples*

*v. The town of Canton*, 69 Mo. 592; *Weightman v. The Corporation of Washington*, 1 Black, 39. There is no evidence tending to show that the city council ever formally adopted any particular plan, or brought to its aid any skill. Indeed, the bridge was a simple affair, having but two bents, and those twelve feet apart. If without piles driven into the ground, or wings built out from the bents to the banks, to prevent working between the bents and banks, it was necessarily dangerous; then the defendant was guilty of negligence in its construction. It is in this sense the word *plan* must have been used and understood. This instruction, it is also contended, placed a right to recover upon a ground not stated in the pleadings. The petition in substance states that the bridge was so negligently constructed, that with the wear from travel thereon, and the action of the water thereunder, it had become unsafe, and that it gave way and fell while the horse and carriage were being driven over it, resulting in a total loss, etc. The petition, it will be seen, counts upon negligence in the construction, as well as want of repair.

3. The court refused to instruct upon contributory negligence, and of this error is also assigned. The only evidence upon which such an instruction could be based was that Crosby attempted to cross the bridge in a trot during the rain fall. It does not appear he knew-the bridge was dangerous, nor was any evidence at all offered to that effect. The banks of the creek were not yet full. It would be unreasonable, under these circumstances, to hold that he must stop and examine the structure. The fact that he went upon so small a structure in a trot is not evidence of contributory negligence. No claim is made that he was violating any municipal regulation. Defendant's first instruction refused left it to the jury to determine both the fact and the law, as to

what would constitute an act of God, and was, therefore, properly refused. The questions designed to be presented by the other refused instructions were better stated in the instructions given. The judgment is affirmed. All concur.