SMITH V. THE CHICAGO & ALTON RAILROAD COMPANY, *Appellant.*

Division One, December 23, 1893.

1. **Negligence**: RAILROAD: PERSONAL INJURIES: JURY QUESTION. Where, in an action by a passenger against a railroad company for personal injuries caused by the negligent starting of the train which threw her from the platform, while she was passing from one car to another, the evidence is conflicting on the question whether or not the passenger left the car before the train moved, such issue is one for the jury.

2. ———: ———: ———: MARRIED WOMAN: LOSS OF WAGES. Under the statute (Rev. Stat. 1889, sec. 6869), which provides that all rights in action which may be due to a married woman "as the wages of her separate labor or have grown out of the violation of her personal rights * * * shall be and remain her separate property and under her sole control," a married woman may, in an action for personal injuries received while a passenger on a railroad train, recover for loss of wages.

3. ———: ———: ———: ———: ———. Proof of such loss of wages is admissible under averments of the petition charging that plaintiff had suffered great pain and anguish and had been deprived of the means of her support.

4. **Personal Injuries**: DAMAGES: VERDICT. The evidence reviewed and a verdict for $6,500 for personal injuries, *held* not to warrant any interference by the supreme court on account of its amount.

5. **Practice**: OPINION EVIDENCE: HYPOTHETICAL QUESTION. Hypothetical questions propounded to a physician to elicit his opinion on the probability of plaintiff's recovery from the effects of a personal injury should be founded on the facts the evidence tends to prove.

*Appeal from Randolph Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*George Robertson* for appellant.

(1) It was error to permit the plaintiff to give evidence of loss of time and wages, for such loss was

not claimed in her petition. *State, etc., v. Blackman*, 51 Mo. 319; *Brown v. Railroad*, 99 Mo. 310. Consequently, instruction number 6 given for plaintiff telling the jury to allow her for loss of time is error. *Smith v. Railroad*, 108 Mo. 243, and cases there cited; *Waddingham v. Hulett*, 92 Mo. 528. Before the plaintiff could have been entitled to this instruction, she should have amended her petition. *Rutledge v. Railroad*, 110 Mo. 312; *Budd v. Hoffheimer*, 52 Mo. 297. Exceptions were saved to both the testimony on wages and loss of time and to the giving of the instruction. The wife is not entitled to recover for loss of time; the right of action for that is vested in the husband. *Lavelle v. Stifel*, 37 Mo. App. 525. (2) The evidence of the witnesses, Mrs. Murray, Mrs. Betts, Mrs. Norris, Mrs. Kenneppe and Mrs. Keeling, all nonexperts, wherein they gave their opinions as to the condition of plaintiff and gave their conclusions as to her health both before and after the injuries, should have been excluded. Rogers on Expert Testimony, p. 81; *People v. Olmstead*, 30 Mich. 434; *Sparr v. Wellman*, 11 Mo. 230; *Erskin v. Lowenstein*, 82 Mo. 308; *King v. Railroad*, 98 Mo. 235. All that part of the testimony of Mrs. Keeling objected to was inadmissible; it was partly hearsay and partly the opinions and conclusions of the witness. *Dunlap v. Elks' Social Club*, 25 Mo. App. 180; *O'Neil v. Crain*, 67 Mo. 250. The question in the redirect examination in the deposition of Mrs. Murray should have been excluded, because it put into the mouth of the witness the answer sought, besides being leading and suggestive. Sec. 4463, Revised Statutes, 1889; *Patton v. Railroad*, 87 Mo. 117; *Walsh v. Agnew*, 12 Mo. 520; *Glasgow v. Ridgeley*, 11 Mo. 34. (3) The hypothetical question asked the doctors, Newman and Martin, were not based on the evidence in the case, but said questions contained facts not in evidence. They

should have been excluded.  Rogers on Expert Testimony, 42, 43; *Webb v. State*, 9 Texas Ct. of App. 490; *Doss v. Wabash, etc., Co.*, 20 S. W. Rep. 472; *Riley v. Sparks Bros.*, 52 Mo. App. 572.  (4) The exclamations of the son, Henry Jones, made at the time the plaintiff fell from the train were part of the *res gestæ* and the plaintiff's instruction number 7 limiting the effect of such exclamations and statements was error.  *Kleiber v. Railroad*, 107 Mo. 240.  (5) Instruction number 5 given at plaintiff's request is error, because it is simply an abstract proposition of law not applied in any way to the facts of the case, and is calculated, therefore, to mislead the jury, or, rather, in undertaking to apply it, they are apt to make a misapplication of it to the prejudice of the defendant.  *Zwisler v. Storts*, 30 Mo. App. 175.  (6) The verdict was contrary to the evidence in the case and the instruction of the court for the evidence shows conclusively that plaintiff undertook to cross the platform of the cars while the train was in motion.  Plaintiff's statement that she started out of the car while the train was in motion and was thrown to the ground by the jerking in starting the train is not only contradicted by all the evidence in the case, but from the fact that she fell from the train more than a quarter of a mile from the station, renders her statement on that point wholly incredible.  It is so contradictory of the physical facts and circumstances that no court is bound to believe it.  *Gurley v. Railroad*, 104 Mo. 211.  (7) The verdict is so excessive of the real damage sustained that it should be set aside.  *Gurley v. Railroad*, *supra*.  And based on such flimsy guessing of so-called experts as it is, taken in connection with the amount, it shows that it was the result of partiality, prejudice, or passion and should therefore be set aside. *Oglesby v. Corbey*, 96 Mo. 285; *Rosecran v. Railroad*, 83 Mo. 678; Thompson on Trials, sec. 2273.

*Perry S. Rader* and *Tyson S. Dines* for respondent.

(1) There was no error in permitting plaintiff to give evidence of loss of time and wages. It was not even necessary to specifically allege this loss in the petition. 5 American and English Encyclopædia of Law, p. 40; *Wade v. Leroy*, 20 How. (U. S.) 34; *Luck v. Ripon*, 52 Wis. 196; *Dooley v. Railroad*, 36 Mo. App. 381; *Brown v. Railroad*, 99 Mo. 310. (2) From the statement of facts alleged in the petition, the loss of time and wages, if any were earned, followed the injury in necessary sequence. *Burriell v. Railroad*, 14 Mich. 34; *Ranson v. Railroad*, 15 N. Y. 415; *Cook v. Railroad*, 19 Mo. App. 329; *DeForest v. City*, 69 N. Y. 614; *Railroad v. Warner*, 108 Ill. 538; *Rosenkranz v. Railroad*, 108 Mo. 16. (3) But the petition, in both courts, does allege that "by reason of said wounds and hurts, inflicted as aforesaid, plaintiff has suffered pain and anguish and has been deprived of her means of support." If appellant had desired to be more fully informed as to the nature of this "means of support" the remedy would have been a motion in the lower court to make more definite and certain. *Luck v. Ripon*, 52 Wis. 196; *Meyers v. Chambers*, 68 Mo. 626; *Daily v. Houston*, 58 Mo. 361. (4) If any objection is made to the wife's claim for loss of time, it ought to be made by the husband and it does not lie in the mouth of the defendant to make it for him. *Overspeck v. Thieman*, 92 Mo. 475. The case of *Lavelle v. Stefel*, 37 Mo. App. 525, cited by appellant, was an action on contract, and is not in point. *James v. Chambers*, 18 Mo. App. 331; *Gabriel v. Mullen*, 30 Mo. App. 464; *Bartlett v. Umfried*, 94 Mo. 530; *Kidwell v. Kirkpatrick*, 70 Mo. 214; *Coughlin v. Ryan*, 43 Mo. 214; Roper on Husband and Wife, 171–176; *McCoy v. Hayatt*, 80 Mo. 130. (5) The hypothetical questions

propounded to the physicians were founded on evidence to support them and were proper. Rogers on Expert Testimony, 40; *Boordman v. Woodman*, 47 N. H. 120; *Lake v. People*, 1 Parker Cr. Cas. 495; *People v. Thurston*, 2 Parker Cr. Cas. 49. (6) The verdict was not excessive. *Goetz v. Ambs.*, 27 Mo. 33; *Porter v. Railroad*, 71 Mo. 68; *Kennedy v. Railroad*, 36 Mo. 364; *Whalen v. Railroad*, 60 Mo. 329; *Dale v. Railroad*, 63 Mo. 460; *Graham v. Railroad*, 66 Mo. 538; *Dougherty v. Railroad*, 97 Mo. 648; *Pry v. Railroad*, 73 Mo. 128; *Waldhier v. Railroad*, 87 Mo. 37; *Rosenkranz v. Railroad*, 108 Mo. 9; *O'Connell v. Railroad*, 106 Mo. 482; *Griffith v. Railroad*, 98 Mo. 168.

BLACK, P. J.—The plaintiff, Mrs. Smith, and her son, fifteen or sixteen years old, were passengers on one of the defendant's trains from Odessa east to Higbee, both way stations. The local cars in the train were crowded, and the plaintiff and her son took seats in the rear coach designed for through passengers, pursuant to the orders of the conductor. When the train reached a station called Yates, she and her son attempted to go to a forward car, and in making the attempt she fell from the car platform, receiving the injuries of which she complains.

The petition is in two counts. The first states that the servants of the defendant negligently directed plaintiff to go forward to another car when the train reached Yates station; the second states that the servants of the defendant directed her to go forward when the train stopped at that station; and that they negligently failed to stop the train long enough to enable her to go forward in safety.

On this state of the pleadings the court gave an instruction at the request of the defendant to the effect that the plaintiff could not recover, if she did

not leave the car in which she was sitting until the train had started. The contention of the defendant now is that the verdict, which was for plaintiff, is contrary to this instruction and the evidence bearing upon this issue.

The evidence on both sides shows that the porter of the car in which plaintiff was seated, had a conversation with the plaintiff at some point before reaching Yates; the plaintiff says it occurred just before reaching Yates, while the porter says it occurred before that. The plaintiff and her son both testified that the porter told them to go to a forward car as soon as the train stopped at Yates, as the car in which they were riding did not stop at the platform at Higbee, the next station. The porter testified that he gave the plaintiff no such order, but that he said he would assist her forward before they reached the last named station. He says he intended to move them forward two cars at the water tank near Higbee, but he does not say he communicated this intention to her. The plaintiff and her son both testified that they picked up their bundles and started forward as soon as the train stopped at Yates. She followed the boy and they both passed through the two car doors, the first being a vestibule door. He crossed over the platform of the car. She says the car gave a jerk just as she stepped upon the platform of the car in which she had been seated, and she fell off on the ground head foremost; that she did not know how long the car had been in motion when she fell, and that she tried to catch hold of the railing, but does not know that she caught hold of anything. Dr. Hawkins assisted in putting her on the train when it stopped and backed up to where she fell off. He was introduced as a witness by the plaintiff, and on cross-examination testified that he talked with her at that time and again at Hig-

bee, that she said she went forward in obedience to the order of the porter, that when she got on the car platform the car started, that her head began to swim and she then sat down. He says she made the further statement that she occasionally had fainting spells and thought she was going to have one then. Plaintiff says she did not make this last statement. The proof is clear that the cars stopped but a short time at the Yates platform, not long enough to enable the plaintiff to go forward with safety.

The defendant called three or four persons who were on the car at the time, and they testify that the plaintiff was slow in getting her packages together, and that she did not get up to go out until the train had started. One witness says the train had moved three hundred yards east of the station platform before she started for the forward car. He thinks she was blown off the platform by the wind. The proof shows that the plaintiff fell off at a point about one-fourth of a mile east of the station platform. One witness, who measured the distance, places it at two thousand feet.

1.     While the evidence produced by the defendant, standing alone, shows that the plaintiff did not leave, or attempt to leave the car until the train had started, still the evidence of the plaintiff and her son is direct and positive to the effect that they started out as soon as the train stopped and before it started. There is, therefore, a direct conflict in the evidence on this question. It was the province and duty of the jury to settle this conflict. The point made that the verdict is contrary to the evidence, and this instruction is, therefore, not well taken.

2.     The plaintiff was a married woman at the time of the accident. She had not lived with her husband for a period of five years, and during that time she supported herself and son by sewing and making

dresses.    She  proved,  over  the  objections  of  the
defendant, that she earned from $20 to $25 per month
as a seamstress prior to the accident and  that she was
unable to pursue her occupation because of the injuries
which  she  received.    This evidence as to earnings was
objected to on these grounds:    *First*, because a mar-
ried woman can  not  sue  for  wages  earned  by her;
*second*, because  loss  of  wages  is  not  claimed  in  the
petition.    Our statute provides that all rights in action
which may be due to a married woman "as the wages of
her  separate  labor   *   *   *   or  have  grown  out  of
any violation of her personal rights, shall   *   *   *   be
and remain her separate property and  under  her  sole
control."    This statute vests in married woman the
right  to  sue  for  and  recover  wages  due  to  her for her
separate labor, and it must follow that she has  the
right to sue for loss of wages in an action like the one
at bar. Loss of earnings is, therefore, a proper element
of  damages  in  this  case.    The  fact  that  she  did  not
live with her husband at the time of the accident is
immaterial so far as concerns this question.    The first
objection to the evidence is therefore not well taken.

The petition states, among other things, that the
plaintiff "was violently thrown  from the platform of
said  car,  onto  the  rocks  of  defendant's  roadbed,
whereby she received wounds, bruises and gashes, upon
her head, face, arm, neck and legs; that by reason of
said wounds and hurts she has suffered great pain and
anguish and *has been deprived of the means of her
support*."    It is here clearly averred that the plaintiff
has been deprived of the means of her support by
reason  of  the  injuries  which  she  received,  and  this
averment includes the less comprehensive one that the
injuries rendered her unable to pursue her occupation
as seamstress.    The objection that loss of earnings
is  not claimed resolves itself into this.    The petition

is too general, and it should have pointed out, in terms, what her means of support were. The plaintiff, it may be observed, did not make proof that she had lost the profits of any particular contract. She simply gave evidence of her earnings in the usual course of her business, and she had the right to introduce such evidence under the general averment made in the petition. *Luck v. City of Ripon*, 52 Wis. 196; *Wade v. Leroy*, 20 How. (U. S.) 34; *Railroad v. Savage*, 110 Ind. 157; *Bloomington v. Chamberlain*, 104 Ill. 268. If the defendant desired a more specific statement, it should have filed a motion to have the petition made more specific and definite. As the evidence was properly received, it follows also that the loss of earnings became an element of damages, and the court committed no error in so instructing the jury.

3. It is further objected that the verdict which was for $6,500, is excessive. The plaintiff received two cuts or gashes, one extending from the mouth to the chin bone, and the other on the side of the face. One tooth was broken and driven through the lip. One arm and one leg were badly bruised, and there was a bruise on the back of the head. According to her evidence she was unable to get out for over three months and during that time she could not use the wounded leg. She is still unable to use it in operating her machine. Though the wound on the head did not appear to be serious at the time of the injury, still it then gave and ever since has given her much trouble and loss of sleep. Physicians who examined this wound before the trial say there is a depression of the skull under it, and that it has produced paralysis of one side of the body. On this evidence, we cannot say the damages are excessive. The trial occurred some four years after the accident, and it appears the plaintiff has been growing worse all the while. The evidence

tends to show permanent injuries of body and mind, and if the jury believed this evidence, the damages are reasonable.

4. The plaintiff called several physicians, and during the direct examination asked them to give their opinions whether the plaintiff would recover, assuming as true a given state of facts. To these questions the defendant objected on the ground that the facts assumed had not been proven. Such questions should be based upon facts which the evidence tends to prove. *Russ v. Railroad,* 112 Mo. 45. We have examined the evidence as set out in the abstracts and find that there was evidence tending to prove all the assumed facts. It is true that the questions assumed as a fact, among others, that the plaintiff was "violently thrown from the platform of a passenger coach on a railroad track to the rocks of the roadbed;" and there is no direct evidence that she fell upon a rock or rocks. But Dr. Scott, to whose office the plaintiff was taken after her arrival at Higbee, in speaking of the wound on her hip, testified that it appeared to have been made by some blunt instrument, probably a rock. We think it may be inferred from the evidence that she fell upon rocks. But aside from this inference there is no such error in the instruction as to call for a reversal. The wounds themselves show clearly that they were caused by some hard, blunt object and the fact that the object is not correctly described in the assumed facts could not have prejudiced the defendant.

5. Some other objections were made but they were considered on a former appeal (108 Mo. 243) and will not be reconsidered in this one. The judgment is affirmed. MACFARLANE, J., not sitting. The other judges concur.